UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
NORTHERN DIVISION AT KNOXVILLE

**DWAYNE HOWELL,**

    Plaintiff,

vs.

    No:

**TOWN OF OLIVER SPRINGS, CHIEF DAVID LAXTON, and ASSISTANT CHIEF RYAN WILLIAMS,**

**JURY TRIAL DEMANDED**

    Defendants.

## COMPLAINT

Comes the Plaintiff, Dwayne Howell, by and through counsel, and files this Complaint for damages pursuant to, *inter alia*, 42 U.S.C. § 1983 for violation of his civil rights and for claims pursuant to Tennessee common law as follows:

## PARTIES

1. Plaintiff Dwayne Howell ("Mr. Howell"), at all times relevant hereto, was a citizen and resident of Anderson County, Tennessee.

2. Defendant Town of Oliver Springs ("Oliver Springs"), at all times material hereto, has been a municipal corporation pursuant to the laws of the State of Tennessee (current Charter established in 1979 Tenn. Private Acts, Ch. 13), which, at all pertinent times, has operated its own police department (the "Oliver Springs Police Department").

3. Defendant Chief David Laxton (hereinafter "Chief Laxton"), at all times material hereto, has been the duly appointed Chief of the Oliver Springs Police Department, with authority

1

and responsibility for the hiring, training, retention, and supervision of persons working as police officers for the Oliver Springs Police Department, as well as the authority to order investigations and to make personnel decisions as to hiring and firing, and to establish rules and norms for the members of the police department. All actions taken by Chief Laxton, as are pertinent to this action, were under color of state law, and he is sued in his individual capacity.

4. Defendant Assistant Chief Ryan Williams (hereinafter "Assistant Chief Williams"), at all material times hereto, has been a duly appointed officer working for the Oliver Springs Police Department, and, as is pertinent to this action, has acted under color of state law, and he is sued in his individual capacity.

## VENUE AND JURISDICTION

5. This Court has original jurisdiction over Mr. Howell's claims arising out of the United States Constitution and 42 U.S.C. § 1983, by virtue of 18 U.S.C. §§ 1331 and 1343.

6. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because the events or omissions which give rise to Plaintiff's claims occurred in Anderson County, Tennessee, which lies entirely within the Northern Division of the Eastern District of Tennessee.

7. Plaintiff is entitled to reasonable attorneys' fees and costs of this action pursuant to 42 U.S.C. § 1988 for all federal claims.

8. This Court has supplemental jurisdiction over all related Tennessee common law claims pursuant to 28 U.S.C. § 1367.

# FACTS

## *April 27, 2022*

9. On the morning of April 27, 2022, Mr. Howell's minor son and Assistant Chief Williams' minor son were involved in a physical altercation (the "Fight") at Clinton Middle School ("Clinton Middle"), where they were enrolled as students.

10. After the altercation, at approximately 8:20 AM, Clinton Middle administrators contacted Mr. Howell and asked him to come to the school campus.

11. Clinton Middle is situated within the City of Clinton, Anderson County, Tennessee.

12. The City of Clinton and Oliver Springs share no common political boundary and are more than ten miles apart.

13. Shortly thereafter, Mr. Howell arrived at Clinton Middle. Clinton Middle administrators informed Mr. Howell that his son would be suspended because of the altercation and told him that he and his son were free to leave the school's campus.

14. Unbeknownst to Mr. Howell, as he was leaving Clinton Middle School with his son, Assistant Chief Williams was arriving to the school's campus and saw Mr. Howell and his son exiting.

15. Mr. Howell and his son entered Mr. Howell's vehicle and began driving away from Clinton Middle.

16. As Mr. Howell and his son drove on South Hicks Street, Assistant Chief Williams approached them from behind in a white unmarked Olivier Springs Police Department, initiated the vehicle's "blue lights" and pulled over Mr. Howell.

17. Notably, the location in which Assistant Chief Williams pulled over Mr. Howell, within the City of Clinton, is outside of the corporate limits of Oliver Springs limits and outside the jurisdiction of the Olivier Springs Police Department.

18. After pulling over Mr. Howell, Assistant Chief Williams approached Mr. Howell's vehicle and ordered Mr. Howell to step out of the vehicle and follow Assistant Chief Williams back to Assistant Chief Williams' Oliver Spring Police Department-issued patrol vehicle (such series of events being the "Traffic Stop Incident").

19. Mr. Howell, who believed Assistant Chief William's order for Mr. Williams to exist Mr. Williams' vehicle, was a lawful order, exited his vehicle and walked back to Assistant Chief William's patrol vehicle.

20. At all times pertinent to the Traffic Stop, Assistant Chief Williams was wearing a shirt with "Oliver Springs Police Department" on it.

21. Mr. Howell had no idea who Assistant Chief Williams was and assumed that this was a routine traffic stop.

22. After Mr. Howell walked to Assistant Chief William's patrol vehicle, Assistant Chief Williams told him, "you aren't going anywhere, your son is being charged with assault."

23. Mr. Howell told Assistant Chief Williams that Clinton Middle was handling the altercation, and Assistant Chief Williams responded, "no they aren't, I am."

24. Assistant Chief William's demeanor was angry and aggressive, causing Mr. Howell to become nervous and acutely fearful for the safety of himself and his son.

25. Mr. Howell suggested that he and Assistant Chief Williams return to Clinton Middle to speak with the school resource officers, employees of the Anderson County Sheriff's Office, who were parked outside of the school.

4

26. During this interaction, Assistant Chief Williams never indicated that Mr. Howell had committed a traffic violation and never issued him a traffic citation.

27. Mr. Howell reentered his vehicle and began driving back to Clinton Middle, calling 911 during the drive.

28. The 911 dispatcher advised Mr. Howell to respond to the City of Clinton Police Department ("Clinton Police Department"), located at 125 West Broad Street, Clinton, Tennessee, 37716.

29. Afterwards, Mr. Howell again spoke with the school resources officer parked outside of Clinton Middle who informed him, once again, that he and his son were free to go.

30. Immediately after this, Mr. Howell went to the Clinton Police Department and filed a complaint against Assistant Chief Williams regarding the Traffic Stop Incident.

*Aftermath and Investigation*

31. The Clinton Police Department investigated Mr. Howell's complaint against Assistant Chief Williams, the findings of which are set forth in an official investigation report.

32. A true and accurate copy of the investigation report is attached hereto as **Exhibit 1**.

33. On May 26, 2022, Mr. Howell filed a complaint against Assistant Chief Williams with the Oliver Springs Police Department. *See* Exhibit 1.

34. Mr. Howell spoke with Chief Laxton while he was at the Oliver Springs Police Department and recounted the Traffic Stop Incident. *See* Exhibit 1.

35. In response, Chief Laxton only said "everything is up to interpretation." *See* Exhibit 1.

36. On July 28, 2022, the Anderson County District Attorney asked Clinton Police Department Chief Vaughn Becker to open a criminal investigation into Assistant Chief William's conduct during the Traffic Stop Incident. *See* Exhibit 1.

37. The Anderson County District Attorney also told Clinton Police Department Chief Vaughn Becker that he would notify the Oliver Springs Police Department of the criminal investigation. *See* Exhibit 1.

38. Accordingly, that same day, Clinton Police Department assigned Lieutenant Carl Bailey (hereinafter "Lieutenant Bailey") to investigate Mr. Howell's Complaint against Assistant Chief Williams. *See* Exhibit 1.

39. During the investigation, the Clinton Middle administrators and school resource officers who interacted with Assistant Chief Williams on April 27, 2023 were interviewed. *See* Exhibit 1.

40. All the aforementioned individuals described Assistant Chief William's demeanor as "very angry." *See* Exhibit 1.

41. Further, the school resource officers confirmed that Mr. Howell and his son were free to leave Clinton Middle and that no one asked Assistant Chief Williams to follow Mr. Howell and his son. *See* Exhibit 1.

42. On August 4, 2022, a subpoena was issued to Chief Laxton requesting all documentation related to the Traffic Stop Incident. *See* Exhibit 1.

43. Lieutenant Bailey executed an "Affidavit for Subpoena" in support of the subpoena in which he swears that the complaint Mr. Howell filed with the Oliver Springs Police Department had been "dismissed by administrators." *See* Exhibit 1.

44. When Lieutenant Bailey issued the subpoena to Chief Laxton, Chief Laxton stated that he first heard of the Traffic Stop Incident when Mr. Howell filed his complaint with the Oliver Springs Police Department on May 26, 2022. *See* Exhibit 1.

45. However, in a later conversation, Chief Laxton told Lieutenant Bailey that he had in fact spoken to Assistant Chief Williams about the Traffic Stop Incident on the same day it occurred. *See* Exhibit 1.

46. Assistant Chief Williams told Chief Laxon that "his son had been assaulted at school and [l]aw enforcement had not been notified" so he "ended up having to stop the guy down the road." *See* Exhibit 1.

47. Concluding the investigation, the Clinton Police Department found that there was evidence that Officer William's conduct violated Tenn. Code Ann. § 39-16-402, entitled "Official Misconduct" and Tenn. Code Ann. § 39-16-403, entitled "Official Oppression." Further, the Clinton Police Department recommended that these violations be presented before an Anderson County Grand Jury. *See* Exhibit 1.

### *Negligence of Chief Laxton and Oliver Springs*

48. On March 3, 2023, Anderson District Attorney General Dave Clark ("DA Clark") sent Chief Laxton a letter regarding the investigation into Officer Williams and the Traffic Stop Incident.

49. A true and accurate copy of this letter is attached hereto as **Exhibit 2**.

50. In the letter, DA Clark states "[i]t was not apparent that Asst. Chief Williams had any police authority in this instance" and that he was "of the opinion that the stop made by Asst. Chief Williams in this instance was unlawful." *See* Exhibit 2.

51. Further, DA Clark noted as follows:

7

> The technicalities of legal authority aside, it appears that many instances of police officer criminality or civil liability occur when officers are unable to control their emotions to the degree that they take unlawful or even illegal actions. To prevent a future instance of this type for Asst. Chief Williams' own good, to protect the public and perhaps protect Oliver Springs from some future liability, it might be appropriate to implement a corrective action plan that includes some education and/or other means of making sure that while on duty or using or displaying O.S.P.D. authority that the importance of that responsibility is reinforced. This is particularly true for police leaders.

See *Exhibit* 2.

52. Despite DA Clark's suggestion that Chief Laxton implement a corrective action plan to protect the public and the City of Oliver Springs from Officer William's unlawful behavior, upon information and belief, no such plan was implemented.

53. Upon information and belief, Assistant Chief Williams was not subject to any disciplinary action by either Chief Laxton or Oliver Springs for the unlawful Traffic Stop Incident.

54. Notably, the Traffic Stop Incident is only the last of several instances in which Assistant Chief Williams was unable to control his emotions and acted unlawfully.

55. On March 3, 2002, a complaint was filed with the Oak Ridge Police Department against Assistant Chief Williams (the "First Complaint").

56. A true and accurate copy of the First Complaint is attached hereto as **Exhibit 3**.

57. The First Complaint alleged that Assistant Chief Williams, who was riding in a civilian vehicle, pulled up beside two men and asked them to stop their vehicle while having a shotgun placed in his lap, following the men to a residence after they attempted to drive away from him. *See* Exhibit 3.

58. During the same incident, Assistant Chief Williams refused to leave the residence and smacked a phone out of the hand of resident's hand when she attempted to call 911. *See* Exhibit 3.

59. On September 22, 2005, a second complaint was filed with the Oak Ridge Police Department against Assistant Chief Williams (the "Second Complaint").

60. A true and accurate copy of the Second Complaint is attached hereto as **Exhibit 4**.

61. The Second Complaint alleged that after Assistant Chief Williams' wife was fired from her job, Assistant Chief Williams harassed and threatened his wife's former employer daily. *See* Exhibit 4.

62. Specifically, Assistant Chief Williams threatened to physically assault the man who fired his wife. *See* Exhibit 4.

63. At one point, the harassment escalated to the point where the employer was forced to initiate lockdown procedures. *See* Exhibit 4.

64. In addition to these complaints, Assistant Chief Williams has also been sued, multiple times, in his capacity as a police officer while working for both the Anderson County Sheriff's Office and the Morgan County Sheriff's Office.

65. On August 20, 2006, Assistant Chief Williams was sued by a Morgan County Jail inmate who alleged Assistant Chief Williams, along with other officers, had beaten him to the point that he sustained internal injuries to his chest.

66. A true and accurate copy of the aforementioned complaint is attached hereto as **Exhibit 5**.

67. On October 27, 2010, Assistant Chief Williams was sued by a citizen he had arrested, for failing to provide the citizen with a receipt for the property he seized pursuant to Tenn. Code Ann. § 53-11-201(a)(1).

68. A true and accurate copy of the aforementioned complaint is attached hereto as **Exhibit 6**.

69. Based upon the many instances of Assistant Chief Williams' misconduct, all of which are available in records that are either public or easily accessible by Oliver Springs and Chief Laxton, a clear pattern of behavior emerges.

70. Despite these instances of misconduct, Oliver Springs and Chief Laxton proceeded to hire Assistant Chief Williams to work for the Oliver Springs Police Department.

71. Additionally, Oliver Springs and Chief Laxton failed to train Assistant Chief Williams on, *inter alia*, his responsibility to act lawfully and responsibly in emotionally charged situations and while displaying Oliver Springs Police Department authority.

72. Further, even after DA Clark suggested that Chief Laxton implement such training, upon information and belief, Oliver Springs and Chief Laxton failed to do so or otherwise discipline Assistant Chief Williams.

**COUNT I – 42 U.S.C. § 1983 VIOLATION OF PLAINTIFF'S FOURTH AMENDMENT RIGHTS AS APPLIED TO THE STATE BY THE FOURTEENTH AMENDMENT AS TO OFFICER WILLIAMS**

73. Mr. Howell incorporates all the foregoing paragraphs as if fully set forth herein.

74. By unlawfully stopping and detaining Mr. Howell outside of the Oliver Springs City Limits, Assistant Chief Williams, under the color of state law, violated the established constitutional right to be free from unlawful search and seizure guaranteed to Mr. Howell by the Fourth and Fourteenth Amendments to the United States Constitution, a violation of 42 U.S.C. § 1983.

75. As a result of Assistant Chief Williams' violation of 42 U.S.C. § 1983, Mr. Howell suffered loss of dignity, humiliation, and mental anguish.

76. Mr. Howell is entitled to his attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

## COUNT II- ASSAULT AS TO OFFICER WILLIAMS

77. Mr. Howell incorporates all the foregoing paragraphs as if fully set forth herein.

78. By unlawfully stopping and detaining Mr. Howell, acting aggressively and angrily, and telling Mr. Howell he was not free to go, Assistant Chief Williams intentionally attempted to frighten Mr. Howell.

79. Mr. Howell was, indeed, frightened by Assistant Chief Williams' intentional conduct which caused him to acutely fear for his safety and the safety of his minor son.

80. As a result of Assistant Chief Williams' intentional conduct, Mr. Howell suffered loss of dignity, humiliation, and mental anguish.

## COUNT III- FALSE IMPRISONMENT AS TO OFFICER WILLIAMS

81. Mr. Howell incorporates all the foregoing paragraphs as if fully set forth herein.

82. Assistant Chief Williams detained and/or restrained Mr. Howell against his will when he pulled him over and told him he could not leave.

83. Assistant Chief Howell was unlawful, as acknowledged by both the Clinton Police Department and DA Clark.

84. As a result of Assistant Chief Williams' unlawful detention and/or restraint of Mr. Howell, Mr. Howell suffered loss of dignity, humiliation, and mental anguish.

## COUNT IV- NEGLIGENT HIRING, TRAINING, SUPERVISION, AND RETENTION AS TO OLIVER SPRINGS AND CHIEF LAXTON

85. Mr. Howell incorporates all the foregoing paragraphs as if fully set forth herein.

86. Oliver Springs and Chief Laxton had a duty to carefully and adequately hire, train, supervise, and retain the police officers employed by the Oliver Springs Police Department to ensure the safety of the public.

87. Oliver Springs and Chief Laxton hired Assistant Chief Williams to be an Oliver Springs Police Department officer despite Assistant Chief Williams' well-documented history of misconduct while employed as a deputy sheriff for both the Anderson County Sheriff's Office and the Morgan County Sheriff's Office.

88. The complaints and lawsuits filed against Assistant Chief Williams are either public records or easily accessible by Oliver Springs and Chief Laxton.

89. Oliver Springs and Chief Laxton failed to train Assistant Chief Williams on, *inter alia*, his responsibility to act lawfully and responsibly in emotionally charged situations and while displaying Oliver Springs Police Department authority.

90. Accordingly, Assistant Chief Williams engaged in unlawful conduct during the Traffic Stop Incident.

91. Oliver Springs and Chief Laxton knew, or should have known, that this failure to train would inevitably result in unlawful conduct by police officers causing injuries to the public such as those suffered by Mr. Howell.

92. Even after DA Clark suggested that Oliver Springs and Chief Laxton implement such training, upon information and belief, they failed to do so or otherwise discipline Officer Williams.

93. As a result of Oliver Springs and Chief Laxton's negligent hiring, training, supervision, and retention, Mr. Howell suffered loss of dignity, humiliation, and mental anguish from Assistant Chief William's unlawful conduct.

**WHEREFORE**, premises considered, Mr. Howell prays that:

1. Process issue and be served on the Defendants, requiring them to answer this Complaint within the time mandated by law;

2. That a jury be empaneled to hear this action;

3. Mr. Howell be awarded a judgment for damages against Officer Williams in an amount to be determined at trial.

4. Mr. Howell be awarded a judgment for damages against Oliver Springs in an amount to be determined at trial.

5. Mr. Howell be awarded a judgment for damages against Chief Laxton in an amount to be determined at trial.

6. Mr. Howell be awarded his reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988.

7. This Court grant Mr. Howell all other relief to which he is entitled.

This the 26th day of April, 2023.

>*/s/ Matthew A. Grossman*
>Matthew A. Grossman (BPR No. 22107)
>Nikol D. Pluess (BPR No. 35608)
>**FRANTZ, MCCONNELL & SEYMOUR, LLP**
>550 W. Main Street, Suite 500
>Knoxville, TN 37902
>Email: mgrossman@fmsllp.com
>        npluess@fmsllp.com
>(865) 546-9321 (phone)